IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>vs.<br><br>RAUL HERNANDEZ-RODRIGUEZ,<br><br>           Defendant. | No. CR 07-1830-DCB-CRP<br><br>REPORT AND<br><br>RECOMMENDATION |

Pending before the Court is Defendant's First Motion to Suppress Evidence and the Government's First Motion to Exclude Expert Testimony. (Docs 17, 29). Both Motions are fully briefed (Docs 22, 31) and on March 24, 2008, this Court held a hearing on the Motions. It is the Report and Recommendation of this Court that the District Judge, after his independent review and analysis, GRANT Defendant's Motion to Suppress Evidence and DENY the Government's Motion to Exclude Expert Testimony.

In the Motion to Suppress, Defendant challenges the validity of a traffic stop of the vehicle in which Defendant was traveling. Defendant argues police did not have the requisite reasonable suspicion to conduct the traffic stop. Defendant seeks to suppress "all the evidence seized as the result of the illegal stop of the vehicle in which [Defendant] was a passenger" as fruit of the poisonous tree.

The officer stopped the vehicle in which Defendant was traveling for failure to signal a lane change. Defendant argues the lane change was made with reasonable safety, which

1 is all that is required by the statute.  The Government argues there was light to medium 2 traffic on the road at the time of lane change and that this traffic may have been affected by 3 the lane change.  Thus, it is the Government's position that a lane change made with 4 "reasonable safety" would have required a signal.

5         To support its Motion to Suppress, Defendant offers Mr. Tim Bright, an accident 6 recontructionist, as an expert witness on the issue of whether Defendant engaged in a lane 7 change with reasonable safety.  The Government seeks to exclude Mr. Bright's testimony, 8 arguing Mr. Bright's testimony will not assist the trier of fact in understanding the evidence 9 because of assumptions he has made to reach his conclusions.  Defendant responds that Mr. 10 Bright's expert opinion is based on time and distance calculations routinely used in his field 11 of expertise and that the assumptions Mr. Bright made were conservative and based in large 12 part on the officer's report and the video.  As such, Defendant argues Mr. Bright's testimony 13 aids the Court in analyzing whether the driver of the vehicle in which Defendant was a 14 passenger engaged in a reasonably safe lane change.

15 **Evidentiary Hearing**

16         The Court conducted an evidentiary hearing and heard arguments of counsel on March 17 24, 2008.  At the evidentiary hearing, the Government presented the testimony of Officer 18 Robert Telles of the Arizona Department of Public Safety ("DPS").  Officer Telles has 19 worked as a patrolman with DPS for over nine years and a canine handler for over six years. 20 In his work, Officer Telles patrols the interstates and handles DUI detection, smuggling 21 detection, accident investigation, and enforces traffic laws.  In his testimony, Officer Telles 22 estimated that sixty percent of his day is spent patrolling highways.

23         During the evidentiary hearing, Officer Telles testified about the events of September 24 25, 2007.  According to Officer Telles, around 6:15 p.m., he was traveling westbound on 25 Interstate 10 west of Tucson in the Marana area.  Officer Telles communicated with a 26 Immigration and Customs Enforcement ("ICE") agent who asked Officer Telles to be on the 27 lookout for a white Chevy pickup truck ("truck") allegedly involved in drug-trafficking. 28 After receiving a description of the truck, Officer Telles testified that he observed the truck

1 approaching his vehicle from behind while both vehicles were traveling in the right lane. At
2 the time, Officer Telles was traveling 55 mph, which is 10 mph below the speed limit.
3 Officer Telles did not know the speed of the truck but estimated it was traveling 65 mph, the
4 speed limit in that area.

5 As the truck approached his vehicle, Officer Telles's observed it move from the right
6 lane to the left lane to pass Officer Telles's slower moving vehicle. In moving from the right
7 to the left lane, Officer Telles noticed the driver did not use his signal. The truck passed
8 Officer Telles's vehicle and then used its signal before completing the pass by moving the
9 truck from the left lane back into the right lane, now traveling in front of Officer Telles's
10 vehicle.

11 At some point after the driver of the truck completed the second lane change to move
12 in front of Officer Telles's vehicle, Officer Telles engaged his emergency lights and initiated
13 a traffic stop of the truck. Officer Telles stopped the truck because he mistakenly believed
14 Arizona law "requir[ed] a continuous signal for a minimum of 100 feet prior to the lane
15 movement." Exhibit 3, Supplement Report, p 52. Arizona law, in fact, requires a lane
16 change be made with "reasonable safety" and that a signal be used "in the event any other
17 traffic may be affected by the movement." A.R.S. § 28-754.

18 In his Report of the traffic stop, Officer Telles focused solely on the driver's failure
19 to signal as justification for the stop. He did not note any facts supporting an argument that
20 the lane change was not made with reasonable safety. At the evidentiary hearing the defense
21 attorney asked Officer Telles, "[o]ther than the signaling, there was nothing unsafe about the
22 – the lane change; is that correct?" Transcript, p 24. Officer Telles replied, "[y]es, ma'am.
23 That's correct." Transcript, p 24. Officer Telles did not mention any traffic that was affected
24 by the lane change nor did Officer Telles say that he was affected in any way by the lane
25 change.

26 Officer Telles testified that he was concerned that a failure to signal a lane change
27 could affect other traffic on the roadway and he offered a few scenarios in which a failure
28 to signal a lane change could create unsafe situations. Officer Telles, however, never said

1   that any of these situations were created with the truck driver's failure to signal a lane
2   change. While Officer Telles testified that there was light to medium traffic on the interstate
3   at the time of the lane change, he had no recollection of any particular traffic, nor any
4   recollection that any of this traffic was affected by the lane change.

5         In his Report, Officer Telles also did not indicate that the driver of the truck was
6   driving in an unsafe manner. Exhibit 3. The driver did not rush up from behind Officer
7   Telles's vehicle, nor did he increase his speed to pass Officer Telles's vehicle or jerk his car
8   into the left lane. Transcript, p 21-23. Officer Telles did not have to brake to avoid the truck
9   when the driver changed lanes. Officer Telles did not observe any other vehicles take
10  evasive action to avoid the truck while the driver executed the lane change. Officer Telles
11  agreed that he would have noted any of the above actions in his Report if they had happened.

12        In addition to Officer Telles's testimony, the Government introduced the video from
13  the traffic stop. In Officer Telles's patrol car, an in-car video system begins recording his
14  traffic stops when he engages his emergency lights. In this case, the camera began recording
15  after the driver of the truck completed the second lane change and was driving in front of
16  Officer Telles's vehicle. On the video it is clear the driver completed his lane change
17  because his signal is no longer on and Officer Telles testified that the driver used his signal
18  for the second lane change. Transcript, p 11. The video begins recording at 18:13:18. At
19  that point, the truck is in front of Officer Telles's vehicle and no turn signal is on. It is not
20  until 10 seconds later, at 18:13:28, that another vehicle ("truck 2") enters the picture traveling
21  in the left lane and passing Officer Telles's vehicle. Truck 2 does not pass the truck involved
22  in this case until 18:13:30, 12 seconds after the video began recording.

23        Defense counsel presented testimony from expert witness, Mr. Tim Bright, an
24  accident reconstructionist with 27 years of experience. Mr. Bright has almost 40 years
25  experience working with non-collision vehicle movements and accident investigation. His
26  history includes over 12 years with the Tucson Police Department ("TPD") during which
27  time Mr. Bright did in-depth investigations into the cause and prevention of accidents. One
28  of Mr. Bright's projects with TPD was to perform an in-depth fatality accident call survey.

1  In that project, Mr. Bright reinvestigated every fatal accident over a four-year time frame to
2  determine the locations and causes of accidents.  Also, Mr. Bright has studied accident
3  reconstruction at a number of institutions including highly competitive programs at
4  Northwestern and the Institute of Safety Analysis in Rockville, Maryland.

5  Mr. Bright testified that in order to understand vehicle collisions, one must first
6  understand vehicle movement.  In his field of expertise, he is able to apply formulas to
7  determine how long in distance and time it would take a vehicle to change lanes.  To reach
8  an opinion in this case, Mr. Bright reviewed Officer Telles's Report and the video from
9  Officer Telles's in-car camera.  He also listened to Officer Telles's testimony, investigated
10 the scene, and read the applicable statute.

11 In reaching his opinion, Mr. Bright observed that the traffic lanes on Interstate 10
12 where the truck driver changed lanes are 12 feet wide.  Mr. Bright also observed that once
13 Officer Telles engaged his emergency lights and thus the camera began recording, there was
14 no traffic in the vicinity for 10 seconds.  To determine how far back truck 2 was from Officer
15 Telles's vehicle, Mr. Bright did make assumptions about the speed the vehicles were
16 traveling.  He assumed, as Officer Telles testified, that Officer Telles was traveling at 55
17 mph.  He also assumed, as Officer Telles testified, that the driver of the truck involved in this
18 case was traveling at 65 mph.  Also, because there was no indication of a severe lane change,
19 Mr. Bright used a value for friction that would be typical of a vehicle changing lanes without
20 making any sudden moves or braking.

21 Based on the video, which showed it took 10 seconds before truck 2 entered the
22 picture, Mr. Bright was able to calculate how far away truck 2 was from Officer Telles's car
23 at the time the driver of the truck in question executed the lane change.  Mr. Bright provided
24 a range of distances for how far away truck 2, the next closest vehicle, was when the driver
25 executed the lane change.  To reach the minimal distance, Mr. Bright added the two
26 successful lane changes completed by the truck in question (each taking about 3.48 seconds)
27 and the 10 seconds before truck 2 appears on the video.  This number totals 16.97 seconds.
28 Mr. Bright then multiplied the 16.97 seconds by the rate of overtake.  The rate of overtake

1  is 14.7 seconds if the truck in question was traveling at 65 mph, as Officer Telles testified, and Officer Telles was traveling at 55 mph, as he testified. Based on those calculations, the minimum distance between Officer Telles's vehicle and truck 2 was 249 feet at the time of the first lane change. Mr. Bright testified that 249 feet was an "absolute minimum distance." Transcript, p 37.

Mr. Bright also testified that another way to determine how far away truck 2 was from the truck in question is to disregard the lane change and simply assume the truck 2 was traveling at 65 mph. At 65 mph, truck 2 traveled 96 feet per second. Mr. Bright multiplied the 96 feet by 10 seconds, which resulted in a distance of 955.5 feet. When Mr. Bright then added in calculations for the front lane change, the distance between the truck in question and truck 2 was 1,288 feet or a quarter of a mile. In Mr. Bright's expert opinion, "the nuts and bolts of both calculations are with the 10 seconds the lane changes, there was no vehicle in the vicinity close enough to cause a hazard by the lane change." Transcript, p 40. Given his calculations, Mr. Bright is of the opinion that the driver of the truck in question made the lane change with reasonable safety. Transcript, p 46.

The Court found both witnesses credible and helpful in reaching a conclusion.

**Preliminary Issues**

Before addressing the substance of the Motion to Suppress, this Court will first analyze the Government's Motion to Exclude Defendant's Expert Testimony as well as Defendant's standing to challenge the traffic stop.

Whether or not expert testimony is necessary or appropriate under the circumstances of a particular case is governed by Rule 702 of the Federal Rules of Evidence:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.

Furthermore, "[i]n some circumstances, to be sure, an expert may render an opinion on an

1 'ultimate issue.'" *United States v. Seschillie*, 310 F.3d 1208, 1212 (9th Cir.2002), *citing*
2 Federal Rule of Evidence 704.

3       The critical issue in Defendant's Motion to Suppress is whether the driver of the truck
4 in which Defendant was traveling made a lane change with reasonable safety.  If the driver
5 was able to make the lane change with reasonable safety, then it appears Officer Telles did
6 not have the requisite reasonable suspicion to stop the vehicle because there was no violation
7 of Arizona law.  From the evidence it is clear Officer Telles stopped the driver for failure to
8 signal the lane change, even though this is not a violation of Arizona law.  A violation of
9 Arizona law occurred only if the driver failed to make the lane change with reasonable
10 safety.  To determine whether the lane change was made with reasonable safety, it is
11 beneficial to know if other traffic was affected by the lane change. Mr. Bright, with his years
12 of training and education in the movement of vehicles, is able to assist the Court in
13 understanding how far away the next closest vehicle, truck 2, was to the truck in question.
14 If truck 2 was not within the vicinity of the truck in question at the time of the lane change,
15 it seems likely that based on the other evidence presented, the lane change was made with
16 reasonable safety.

17       In her cross-examination and final argument to the Court, the prosecutor argued that
18 Mr. Bright made too many assumptions for his opinion to be helpful to the Court.  It is the
19 Court's opinion that Mr. Bright's assumptions were conservative and limited.  Of the few
20 assumptions Mr. Bright made, most of them were based on the testimony of Officer Telles
21 about the speed of his vehicle and of the truck involved in this case.

22       Mr. Bright explained widely accepted formulas employed by accident
23 reconstructionists to determine how long in distance and time it would take for a vehicle to
24 change lanes and how much distance is between two vehicles before that lane change. The
25 Court does not have the experience or expertise in traffic movements to take the 10 seconds
26 time between the truck in question and truck 2 and compute the distance between those
27 vehicles at the time of the lane change.  Mr. Bright, with his breadth of experience and
28 expertise, helps this Court make that determination.  This Court recommends that the District

1 Judge DENY the Government's Motion to Exclude Expert Testimony.

2 The second preliminary issue is whether Defendant has standing to challenge the legality of the traffic stop of a vehicle in which he was only a passenger. The Government does not argue against Defendant's standing to challenge the reasonableness of the initial stop and it seems clear that Defendant has the right to challenge the stop.

6 As a passenger of the car, Defendant "has no reasonable expectation of privacy in a car that would permit [his] Fourth Amendment challenge to a search of the car." *United States v. Eylicio-Montoya*, 70 F.3d 1158, 1162 (10th cir.1995). Defendant, however, challenged the initial stop, and "a passenger may challenge a stop of a vehicle on Fourth Amendment grounds even if she has no possessory or ownership interest in the vehicle." *Id.* at 1164; *see also United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir.2000) (citing cases in which a passenger's challenge to a traffic stop was analyzed without addressing the standing issue). Further, while Defendant does not have standing to challenge the search directly, "if the defendant could establish that the initial stop of the car violated the Fourth Amendment, then the evidence that was seized as a result of that stop would be subject to suppression as 'fruit of the poisonous tree.'" *United States v. Eylicio-Montoya*, 70 F.3d 1158, 1163-1164 (10th Cir.1995); *see United States v. Kimball*, 25 F.3d 1, 5 (1st Cir.1994) (because passenger's interests are affected when vehicle is stopped, he has standing to challenge the stop and if stop was illegal, evidence may be excluded as fruit of poisonous tree). Defendant in this case, as a passenger of the truck, has standing to challenge the stop of the truck.

## Standard for Review

23 Under the Fourth Amendment, government officials may conduct an investigatory stop of a vehicle only if they possess "reasonable suspicion: a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir.2000) (quotations omitted). A stop can be justified if the police officer has a reasonable suspicion that a traffic violation has occurred. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-1105 (9th Cir.2000). If an officer has a

1 reasonable suspicion that a traffic violation has occurred, it does not matter whether the basis
2 for a stop is mere pretext. *See Whren v. United States*, 517 U.S. 806, 817-819 (1996). Such
3 reasonable suspicion "requires specific, articulable facts which, together with objective and
4 reasonable inferences, form a basis for suspecting that a particular person is engaged in
5 criminal conduct." *Thomas*, 211 F.3d at 1189 (quotations omitted). In a motion to suppress
6 the government has the burden of production to put forward the "specific and articulable
7 facts." *United States v. Willis*, 431 F.3d 709, 715 n. 5 (9th Cir.2005) (quotations omitted).
8 The defendant has the burden of proof on the motion to suppress. *Id.*

9 With respect to violations of traffic law, a good-faith belief that the law prohibits
10 certain conduct is not sufficient if the law does not actually prohibit such conduct. *Lopez-*
11 *Soto*, 205 F.3d at 1106. Thus, an officer's belief that a violation has occurred must be
12 grounded in the law, his "[s]uspicisons must be reasonable, and they cannot be if they are not
13 sufficient to cause an officer to believe that the driver has done something illegal. If an
14 officer simply does not know the law, and makes a stop based upon objective facts that
15 cannot constitute a violation, his suspicions cannot be reasonable." *United States v.*
16 *Mariscal*, 285 F.3d 1127, 1130 (9th Cir.2002).

17 In *Mariscal*, the defendant was stopped for failing to signal a turn. 285 F.3d at 1129.
18 Arizona law requires a signal only if the turn may affect other traffic. A.R.S. § 28-754. The
19 defendant filed a motion to suppress the evidence found in his vehicle, arguing there was no
20 reasonable suspicion for the stop since he had not violated any traffic law. 285 F.3d at 1129.
21 The government argued that traffic *could* have been affected, but the Ninth Circuit was
22 unconvinced. It stated "there was not a shard of evidence that any vehicle other than the
23 Crown Victoria itself was affected by the right turn." *Id.* at 1131. The Court further said that
24 allowing a traffic stop with no evidence that traffic was affected makes the language of the
25 statute requiring a signal if traffic "'may be affected' largely nugatory as a practical matter."
26 *Id.* at 1132.

27 In the case before this Court, there is no evidence that the driver's lane change was
28 not conducted with reasonable safety. Officer Telles made the traffic stop, as he noted in his

- 9 -

1  Report, because the driver of the truck failed to signal for a 100 feet prior to changing lanes.
2  Failing to signal a lane change, as the statute clearly shows, is not a violation of the Arizona
3  statute.  In his testimony, Officer Telles agreed with defense counsel that there was nothing
4  unsafe about the lane change except for the lack of a signal.  Officer Telles's report, which
5  makes no mention of any unsafe movements or other vehicles also supports a conclusion that
6  the lane change was made with reasonable safety.  The Government argues other traffic *may*
7  have been affected by the driver's lane change, but fails to present any evidence that traffic
8  was actually affected.  Furthermore, Officer Telles testified that if traffic had been affected,
9  he would have noted it in his Report.  Finally, Mr. Bright's testimony and interpretation of
10 the 10 seconds on the video before truck 2 enters the picture, support a conclusion that no
11 other traffic was closer than a couple hundred feet when the driver made the lane change.
12 Defendant has thus met his burden of proof on the Motion to Suppress.

**Recommendation**

For the reasons outlined above, the Magistrate Judge recommends that the District Judge after his independent review and analysis, GRANTING Defendant's Motion to Suppress. (Doc 17) and DENYING Government's Motion to Exclude Expert Testimony (Doc 29).

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within ten days of being served with a copy of the Report and Recommendation.  If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **cr-07-1830-DCB**.

The Clerk is directed to mail a copy of the Report and Recommendation to Plaintiff and counsel for Defendant.

DATED this 18th day of April, 2008.

*[signature]*

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE